WISE vs. DARBY, Administrator, &c.

1. A writ of error will lie, on the decision of a motion, to require a sheriff to pay over money in satisfaction of an execution.

2. The lien of an execution in the hands of a sheriff, the levy of which is directed to be stayed by the plaintiff, is destroyed as to executions subsequently coming to the hands of the sheriff, and the latter will be first satisfied.

3. So, where there has been a levy and the proceedings are then stayed by plaintiff.

ERROR to St. Louis Court of Common Pleas.

CALLAHAN, for Plaintiff in Error.

LEONARD & BAY, for Defendant in Error.

POINTS AND AUTHORITIES.

1. The executions of the plaintiffs in error, by the directions given to the sheriff to delay the levy for an indefinite period, became dormant, and constructively fraudulent: the plaintiffs, therefore, lost their preference. Kellogg vs. Griffin, 17 J. R. 275; Benjamin vs. Smith, 4 Wend. 333; Storm & Buckman vs. Woods, 4 J. R. 109; Kempland vs. Macauly, Peake 66; Pringle vs. Price, 11 Price, 415.

2. The last executions of the plaintiffs in error were improvidently issued. The executions first issued were returnable to the September term of the court, under the 5th sect. of the act of Feb. 6, 1843; Session Acts of 1842–3, p. 55; also, 28 sect. of act establishing the court of common pleas of St. Louis county; Session acts of 1841–2, p. 53.

3. A writ of error will not lie in this proceeding, which is not a *"final judgment or decision,* in the cause," within the meaning of the first section of the act of 1835, concerning "practice in the supreme court," but is an interlocutory or collateral order. Buel vs. Street, 9 J. R. 443; 14 J. R. 76; Brooks vs. Hunt, 17 J. R. 484; in the matter of Negus, 10 Wend. 34.

NAPTON, J., delivered the opinion of the court.

This was a motion made by Darby, the defendant in error, in the court of common pleas of St. Louis county, asking that court to instruct the sheriff to sell certain property levied on by virtue of an execution in favor of said Darby against M. & F. Steigers, and to apply the proceeds to the satisfaction of that execution.

The motion was resisted by the plaintiffs in error, who claimed the property, by virtue of executions in their favor, issued anterior to the executions in favor of the plaintiff in error, and first placed in the hands of the sheriff. Affidavits in support of the motion, and counter affidavits in behalf of plaintiffs in error, were read on the hearing of the motion. The court sustained the motion, and directed the proceeds of the sale to be paid over to the defendant in error.

It appears from the affidavits, and from the returns made upon each of the executions, that the execution in favor of Darby, adm'r of Gross, against M. & F. Steigers, issued on the 24th March, 1843, for the sum

of about eight hundred dollars, and was placed in the hands of the she-riff on the same day.   At that time, the sheriff had in his hands two executions against the same parties, one in favor of S. Wise, and the other in favor of P. Wise, amounting to about seven hundred dollars; but annexed to each of the last mentioned executions, were written in-structions by the plaintiff's attorney directing the sheriff not to levy, until ordered by said attorney.   The defendant in error directed the sheriff to levy his execution forthwith, and the sheriff did so.   On the evening of the same day, and before the inventory of the property le-vied on under the execution of Darby was completed, the attorney of the plaintiff in error went to the Sheriff, and tore off the wrtten instruc-tions appended to the executions, and directed an immediate levy on the same property.   The Sheriff levied, made sale and returned the facts es-pecially, bringing the money into court, to be paid over as the court should direct.

Before examining the main question, it is necessary to dispose of the objection taken by counsel for the defendants in error, "that this is not a final judgment or decision within the meaning of our act regulating the practice and procedings of this court, and that a writ of error will not lie."

As the Sheriff had not paid over the money collected, there could be no objection to settling the rights of the execution creditors by motion. Hutchinson vs. Johnson, 1 T. R. 732.   That the decisions of the court of common pleas on that motion was final ; that it was the end of the case is apparent.   Unless there be something in the character of a judgment upon a motion, which would make a *mandamus* the proper writ to test the propriety of that judgment, the objection to the writ of error cannot prevail.

The writ of mandamus only lies in cases where the inferior court has done, or refuses to do, a mere ministerial act.   It would seem suffi-ciently manifest from the statement of the facts in this case, that the decision, or judgment upon the motion, involved the determination of a question of law, and the application of that law to the facts in proof. We see no objection, therefore, to the writ of error.

The main question for determination is : where an execution is de-livered to a sheriff, and the plaintiff or his attorney directs the officer not to levy, and a second execution is placed in the hands of the same officer, which is first levied, and the goods sold under both writs, which shall be first satisfied ?

Though the writ of execution binds the goods from the time it is de-livered into the hands of the officer, the property of the defendant in

the execution is not divested until he levy. As a consequence of this principle it has been held, that where two executions are delivered to the sheriff, and he levies and sells under the one last delivered to him, such sale passess a good title. to the purchaser, and the only remedy of the plaintiff in the first execution is against the officer. Smallcomb vs. Buckingham, 1 Salk. 321. And Lord Holt intimated in this case, that if the person who sued out the first writ concealed it in his hand, the sheriff may rightly make execution on another writ, which bears the last test, but came first to his hands. In such case the sheriff would not be responsible. This was before the Statute providing that writs should bind only from the time of their delivery. But where two writs of *fieri facias* were delivered to the sheriff on different days, and the levy was made under the second execution, but no sale actually made, the sheriff was held justified in paying over the proceeds to satisfy the first execution. Hutchinson vs. Johnson, 1 Term R. 731.

In the case of Payne vs. Drew, 4 East 523, a writ of sequestration issued from the court of chancery in June, 1800 ; eighteen months afterwards, and before the sequestrators had executed the writ, a writ of execution from the court of common pleas came to the sheriff's hands, and it was held that the sheriff was not justified in returning *nulla bona* to the execution. Lord Ellenborough said, that where there were several authorities equally competent to bind the goods of a party when executed by the proper officer, they shall be considered as effectually, and for all purposes bound by that authority, which first actually attaches upon them in point of execution, and under which an execution shall have been first executed.

In the case now before the court, the execution in favor of the plaintiffs in error, first came to hand, and the execution of the defendant in error was first levied; and according to the case of Hutchinson vs. Johnson, if the written instructions are thrown out of consideration the sheriff, notwithstanding his having levied first under the execution of defendant in error, should pay the proceeds to the plaintiffs in the first executions. The question then arises, did the lien of the first execution commence from the time of their delivery, or was that lien destroyed, or suspended by the acts of the plaintiffs in error ?

In England, as well as in this country, the doctrine is firmly established, that where the creditor gives instructions to the officer, *after a levy*, to delay, or not to proceed on the execution, such execution is held to be fraudulent, and void as against a subsequent execution. Whipple vs. Foot, 2 J. R. 416 ; Storm vs. Woods, 11 J. R. 110 ; Rew

vs. Barber, 3 Cow. 279; Edwards vs. Harben, 2 Term R. 596, 7 Mod. 37; Russell vs. Gibbs, 5 Cow. 394.

This doctrine results from the principle, that the levy divests the property from the defendant, and that to leave such property in the possession of the defendant, by the connivance, or at the request of the plaintiff in the execution, would be fraud against subsequent executions. Would not the objections be as great to the conduct of a plaintiff, who when he delivers his writ, accompanies that delivery with a declaration that he does not desire it to be executed? The lien of an execution, is merely the right to have the property of the defendant subjected to the payment of that execution. This lien attaches by the delivery of the writ. But a lien which cannot be enforced, would seem to be a contradiction in terms; and if, as we have seen in the case of Smallcomb vs. Buckingham, the judge was influenced in his determination by the fact that the plaintiffs in the first writ had told the sheriff he was in no haste, (1 Salk. 320,) much stronger would be the inference against the vitality of a lien, when the party interested actively interferes, and directs the officer not to levy. Is it not obvious that to uphold such a lien, would be to open a door to fraud, and enable plaintiffs by collusion to protect the goods of their debtors from other executions?

If the property of the debtor is held by the first execution, notwithstanding the officer is directed not to levy it, and that execution is sufficient to cover all the property, the other creditors cannot sue out executions, so as to be available, and the property of the debtor is thus protected. Thus all the evils would arise, to suppress which, the courts established the rule, that the creditor should not interfere after a levy, and still retain his priority.

Judgment affirmed.