## BRADLEY v. HEFFERNAN, Appellant.

### Division One, June 12, 1900.

1. **Judgment: ASSIGNMENT: PAYMENT: PURCHASE BY ASSIGNEE.** An assignment of a judgment is not a payment thereof unless it is assigned to the defendant. And any other assignee has the right to purchase at the execution sale the property levied upon.

2. ————: **NOTICE: SUFFICIENCY: AMENDING PLEADINGS.** Plaintiff sued for certain property he had bought at execution sale, At the trial it developed that the sheriff first gave notice which included a part of the land sued for, and this was published for more than twenty days prior to the sale, but after it had been published for two weeks other lands were discovered and another notice advertising all the lands for sale at the same time was given for two weeks, and at the sale plaintiff bought all the lands under both notices. At the trial, when this fact was developed by the evidence, plaintiff by leave of court struck from his petition all claim to all lands except such as were sold under the notice published for twenty days,

and the court gave him judgment for them. *Held*, that the notice for twenty days was in no wise affected or impaired by the notice subsequently published for twelve days, but in every way complied with the statute, and the sale thereunder was legal.

3. ———: AT THE SAME TERM: PRIORITY OF EXECUTION. Where there are two judgments rendered at the same term, and there is execution and sale under one of them, the purchaser at such sale takes the title over a purchaser at a sale at a subsequent term of court under the other.

4. ———: ———: ———: CASE STATED. Judgment was rendered in the circuit court on September 17, 1896, levied on October 28th, and execution sale on December 23rd, at the September term of the circuit court, 1896, and at this sale plaintiff became the purchaser of the lands in controversy. Two other judgments were also rendered against the same debtor before a justice of the peace on August 28th and October 31st, 1896, and transcripts filed in the circuit court on November 2d and December 15th, during the September term 1896 of said court, and sale was made thereunder and defendant became the purchaser on March 18, 1897, at the January term, 1897. *Held*, that plaintiff's purchase being under a prior execution and sale, he took the title, nor is there anything in the statute in regard to judgments rendered at the same term being concurrent or equal liens, in conflict with this holding.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,*
Judge.

AFFIRMED.

*Heffernan & Heffernan* for appellant.

(1) The plaintiff's deed is void. The sheriff's notice of sale was published only eleven days. R. S. 1889, sec. 4914; Dow v. Chandler, 85 Mo. 245. The power to sell does not attach or is not brought into existence until the notice, in the mode prescribed by law, has been given. Yankee v. Thompson, 51 Mo. 240; Smith v. Funk, 57 Mo. 240; Spurlock et al. v. Allen, 49 Mo. 178; Abbott v. Doling, 49 Mo. 302; Spurlock v. Dougherty, 81 Mo. 172; Raley v. Guinn, 76 Mo. 277; Pearce v. Tittsworth, 87 Mo. 635;

Moore v. Harris, 91 Mo. 621. (2) When the law prescribes a particular or specific manner for making advertisement, or giving notice, no officer has the right to substitute another or a different mode. State ex rel. v. Mantz, 62 Mo. 262; Freeman on Ex., p. 310; Trott v. McGaooch, 1 Marg (Tenn.) 469; Underwood v. Jeans, 4 Harring 27; Freeman on Void Jud. Sales, sec. 28; Reynolds v. Wilson, 15 Ill. 394. (3) The attorney Horine, had no authority to assign the judgments to the plaintiff under which he sold the land in controversy. Freeman on Judgments, sec. 430; Head v. Gervais, 1 Walk (Miss.) 431; R. S. 1889, sec. 6043. (4) "A transcript, from the date of filing in the office of the clerk, becomes equivalent to a judgment of the circuit court." Jordan v. Surghnor, 107 Mo. 524. The defendant's deed contains all necessary recitals. Jordan v. Surghnor, 107 Mo. 520. The transcript judgments under which the defendant claims title being filed during the session of the circuit court at which the judgments under which the plaintiff's claims were rendered or filed, each party had concurrent liens. R. S. 1889, secs. 6286-6287; R. S. 1889, secs. 4018-4019; Jordan v. Surghnor, 107 Mo. 520. But the enforcement of the transcript judgment lien was stayed until the return of *nulla bona* by the constable. Burke v. Miller & Giles, 46 Mo. 258.

*Jas. R. Vaughan* for respondent.

(1) The theory of appellant is, that if a sheriff sells land at the court house door and at the time he does so, reads a notice of sale or has one posted in his sale book, that he and all concerned are bound by that notice and that other notices though properly given and valid, are of no avail. Respondent will not argue against this theory or doctrine further than to say its own statement at once con-

demns it and the trial court properly ruled in making its declaration of law upon that subject. (2) Appellant urges that Horine as attorney and agent had no authority to assign the judgments, which included the judgment under which plaintiff Bradley bought. To this contention the respondent might readily assent, as this fact can only show, that Bradley as the purchaser was in no way a party to the record or execution, and hence was not privy in any way to the sale except as a purchaser. This being the case, even the extreme doctrine, as sought to be applied by appellant, that the sale was void, could not reach Bradley. Appellant, however, contends that while the effect of the assignment by Horine was not to transfer the judgment, it was to pay the debt. Such an inference seems to counsel for respondent to be absurd. The money was not given to Horine as payment of the judgments but as a purchase of the same, and whether or not it was an actual legal assignment by virtue of his authority, as shown by letters and the receipt of the money and consequent ratification of his acts by his clients, it could not amount to a payment contrary to the wishes and intentions of all parties concerned. (3) A justice's judgment, when filed during the sitting of the circuit court does not relate back to the first day of such circuit court and take an equal lien with such judgments, but its lien takes effect only from the time of the filing of the transcript.

MARSHALL, J.—This is an action, begun in the Greene County Circuit Court, on the 23d day of August, 1897, under the provisions of the act of March 15, 1897 (Laws 1897, p. 74, R. S. 1899, section 650). The petition alleges that the plaintiff is the owner, in fee simple, and in possession of certain land in Greene county; that the defendant claims an interest in the lands adverse to the plaintiff, and claims to own some right, title and interest therein,

Bradley v. Heffernan.

but in fact has no interest and has never been in possession, and prays the court to ascertain and determine the interests of the parties in the land, and to adjudge that the defendant has no interest therein. The amended answer, filed by leave during the trial, is, 1st, a general denial, with a prayer for possession;· 2d, a plea that the judgment under which the plaintiff claims title had been paid off and discharged before the day of sale; 3d, a plea that the sheriff published the notice of sale for only twelve days and hence no title passed to plaintiff by the sheriff sale; 4th, a plea that the defendant "claims title by virtue of a sheriff's deed, based on various judgments rendered against one Conrad Eckas, and prays judgment against the plaintiff for the possession of the real estate sued for herein."

The extremely meager statement of the facts in the petition and answer make it necessary to refer to the facts developed on the trial in order to understand the nature of the controversy.

Conrad Eckas is the common source of title, and both parties claim as purchasers under execution issued upon judgments rendered against Eckas.

The plaintiff claims under a sheriff's deed, made under execution sale, on December 23d, 1896, based upon three judgments rendered by the circuit court of Greene county on September 17, 1896, against Conrad Eckas, and in favor of Lawson Brothers for $159.18, the Logeman Chair Manu-· facturing Company, for $159.18, the same company for $393.25, and a judgment rendered by a justice of the peace of Greene county, on September 1, 1896, in favor of F. A. Rauch & Co., for $203.75, a transcript of which was filed in the circuit clerk's office on September 4, 1896.

The defendant claims under a sheriff's deed, made under execution sale on March 18, 1897, based upon sixteen judgments, two of which were rendered by the circuit court

of Greene county, in favor of Overbeck Bros. & Co. and Jasper Wild & Co., on the 14th of January, 1897, for amounts not disclosed by the record, and the other fourteen were rendered by some justice of the peace, it is not shown whom, on the 28th of August, and the 31st of October, 1896, for amounts not specified, transcripts of twelve of such judgments were filed in the circuit clerk's office on November 2d, and of one of such judgments on December 15, 1896, and transcripts showing *nulla bona* returns were so filed as to all of said judgments on January 25th and 27th, 1897. The executions under which the plaintiff derives title were levied on the 28th of October, 1896, those under which the defendant derives title were levied on the 5th and 8th of February, 1897. The sale at which the plaintiffs bought was on the 23d of December, 1896, during the September term, 1896, of the circuit court, and the sale at which the defendant bought was on the 18th of March, 1897, during the January term, 1897, of that court. After the levy of the executions under which plaintiff claims title had been made the plaintiffs bought and took an assignment of the judgments upon which those executions were based, from the judgment creditors, paying therefor sixty or sixty-five cents on the dollar, and at the sale he bought the property for sixty dollars. The defendant paid fourteen dollars for the property at the sale, under the sixteen executions, on March 18, 1897. The sheriff published the notice of the sale under the plaintiff's execution for the first time on the 27th of November, 1896, for the second time on December 4, 1896, for the third time on December 11, 1896, for the fourth time on December 18, 1896. This notice of sale covered all the property for which the trial court gave the plaintiff judgment. Some time prior to the 11th of December, however, it was discovered that the notice did not cover all the property owned by Eckas, so the

sheriff published a second notice on the 11th and 18th of December, covering all the property covered by the first notice and also the subsequently discovered property. The sale took place on the 23d of December, 1896, so the second notice was only published twelve days before the sale. The petition embraced all the property referred to, but upon objection of the defendant the trial court decided that the plaintiff could not recover as to such subsequently discovered property, so published for sale for only twelve days, and thereupon the plaintiff by leave, and against defendant's objection, struck out of his petition all reference to such subsequently discovered property. The September term of the Greene County Circuit Court began on the second Monday in September, and continued in session until the 24th of December, 1896, and its January term began on the second Monday in January, 1897. The judgments of the circuit court under which plaintiff claims title, were rendered on the 15th of September, 1896. The transcripts of the justice's judgments under which the defendant claims title were filed in the circuit clerk's office, twelve of them on the 2d of November, and one of them on the 15th of December, 1896, and the transcript showing the *nulla bona* returns thereon were filed in said clerk's office on the 25th and 27th of January, 1897. The trial court entered judgment for the plaintiff, and defendant appealed.

The defendant assigns three errors: 1st, that the judgments under which the plaintiff derives title were paid and discharged before the sale under the executions issued thereon; 2d, that plaintiff acquired no title because the notice of the execution sale was only published for twelve days; and 3d, that he has title based upon his purchase at the execution sale upon the sixteen judgments.

## I.

The first contention of the defendant is that the judgments under which the plaintiff derives title were paid and discharged before the sale under the executions issued thereon.    This is a clear misapprehension.    The plaintiff bought and obtained an assignment of those judgments from the judgment creditors, and if those creditors would have obtained a good title at the execution sale, the plaintiff, their assignee, obtained the same kind of a title.    No one would deny the right of a plaintiff in an execution to buy the property sold under the execution, and the assignee of such a plaintiff stands in the shoes of his assignor.    [R. S. 1889, secs. 6043-4-5; Burgess v. Cave, 52 Mo. 43.]    The plaintiffs in the execution parted with their judgments, but the judgments were not satisfied, either by the defendant or any one for him, and it is only in case the defendant or some one for him acquires the judgment that it is treated as paid. The defendant says in his brief that he claims that the plaintiff bought these judgments under a secret arrangement with the debtor, Eckas, in order to hinder and delay Eckas' creditors, but there is no such issue tendered by the defendant's answer, and not one word of testimony in the case upon which to predicate such a contention, and therefore no such question can be considered in this case.    [Waddell v. Williams, 50 Mo. l. c. 224.]

## II.

The second error assigned by the defendants is that the sheriff's sale passed no title to the plaintiff because only twelve days' notice was given of the sale.

This, too, is a misapprehension.    It is true as to the subsequently discovered property there was only twelve

days' notice of sale given, but the trial court sustained the defendant's objection as to such property and denied the plaintiffs' title thereto and it was eliminated from the petition. Of this the defendant has no ground to complain. As to the property affected by the plaintiffs' judgment, there was more than twenty days' notice of the sale given, that is, the first publication was on November 27th, the second on December 4th, the third on December 11th, and the fourth on December 18th, and the sale was on December 23, 1896, and therefore the requirements of section 4941, Revised Statutes 1889, as to the duty of the sheriff in selling real property under execution, were fully met and complied with. The second notice which covered the property described in the notice so legally published and also the subsequently discovered property, did not affect the validity of the first notice at all, for as to the property commonly described in both notices, it was only a double notice of intention to sell such property and one of such notices being legally sufficient, it was not waived or in any manner impaired by the second insufficient notice.

The second notice can properly only be considered as unnecessarily cumulative. It does not even make the first notice an irregularity in the sheriff's proceedings under the executions, and it is the established rule in this State that mere irregularities do not avoid sheriff's sales. [Young v. Schofield, 132 Mo. l. c. 668 and cases cited.]

## III.

The third assignment of error is that the defendant has title based upon his purchase at the execution sale upon the "transcript judgments."

The pith of this contention is that the transcripts of thirteen judgments of the justice of the peace were filed in

the circuit clerk's office during the September term, 1896, of the circuit court, and therefore they were equal liens with the judgments of the circuit court which were rendered prior to the filing of such transcripts, because they were entered in the circuit clerk's office at the same term.    Sections 6286, 6287, 4018 and 4019, Revised Statutes 1889, are relied on to support this contention.    Section 6286 makes it the duty of a justice to give to the party in whose favor he has rendered a judgment, a certified transcript thereof, and requires the circuit clerk to file such transcript, and enter the judgment on his docket of court judgments.    Section 6287, gives to every such judgment "the same lien on the real estate of the defendant in the county as is given to judgments of circuit courts."    Sections 4018 and 4019, Revised Statutes 1889, have no possible bearing upon the questions in hand, as they relate to appeals from justices of the peace in criminal cases.    The defendant doubtlessly intended to refer to sections 4018 and 4019, Revised Statutes 1899, which are the same as sections 6286 and 6287, Revised Statutes 1889.

Section 6012, Revised Statutes 1889, provides that judgments shall be a lien "after the rendition thereof," and if two or more judgments are rendered at the same term "as between the parties entitled to such judgments or decrees, the lien shall commence on the last day of the term at which they are rendered;" that is, it is claimed, such justice's judgments become equal to judgments of the circuit court, when such transcripts are filed and such judgments entered by the circuit clerk in his docket of judgments, and Jordan v. Surghnor, 107 Mo. l. c. 524, is cited as sustaining this view.    But conceding that in this way the judgments of the justice of the peace became in legal effect judgments of the circuit court and equal in priority and lien, it will not sustain the defendant's contention, for it is the settled rule in this State that where two judgments are equal, whether

embodied in the same decree or in separate decrees entered by the same court at the same term and therefore the liens of both commenced on the last day of the term, under section 6012, R. S. 1889, the holder of one may acquire a priority over the holder of the other by having his execution issued and levied first, on the principle, as stated by WAGNER, J., in Bruce v. Vogel, 38 Mo. l. c. 105, that "he shall enjoy the benefit of his industry." [Shirley v. Brown, 80 Mo. l. c. 247.] In no event could the holder of a judgment of equal lien claim that a sale under a judgment of the same force and lien as his conveyed no title. A sale under either of such judgments carried the title to the purchaser and the holder of the judgment of equal lien would only be entitled to his pro rata share of the proceeds of the sale, but if one sleeps on his rights and the other is diligent (and the case of Bruce v. Vogel, *supra*, is directly in point) there is no pro rata distribution of the proceeds, but the diligent creditor is rewarded.

So it follows in this case that the purchaser at the sale on December 23, 1896, got a good title to the property sold, by which is meant only that covered by the decree, as against the purchaser at the sale on March 18, 1897, and as the creditors under whose judgments the property was sold on December 23, 1896, were diligent and had their executions issued and levied first, they acquired a priority of claim to the proceeds of the sale over those creditors whose executions were not issued or levied until February, 1897. Or otherwise stated, the title of the plaintiff to the lands as the purchaser at the December sale, and to the proceeds of sale as assignee of the judgment creditors, is superior to the title of the defendant to the lands as purchaser at the February sale, and the defendant is not entitled to share pro rata in the proceeds of the December sale.

The judgment of the circuit court is affirmed. All concur.